# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **HUNTSVILLE GOLF DEVELOPMENT, INC.,** | } } } | |
| **Plaintiff,** | } } | |
| | } | **Case No.:  5:13-CV-00870-MHH** |
| **v.** | } } | |
| **ESTATE OF ROBERT BRINDLEY, SR., et al.,** | } } | |
| **Defendants.** | | |

## MEMORANDUM OPINION

## I.     Introduction

This case is before the Court on the defendants' motions to dismiss. Huntsville Golf Development ("HGD") sued the Estate of Robert Brindley, Sr. (through its executors, Ronald Brindley and Richard White); Whitney Bank; Jeffery Brindley, an heir of Robert Brindley, Sr.; and an alleged partnership between the Brindley Estate and Whitney.  The current disputes among the parties are an outgrowth of dealings that took place more than twenty years ago between HGD, solely owned by Nelson Chatelain, and the Brindley Construction Company, Inc. ("BCCI"), solely owned by Robert Brindley, Sr. at the time.

In 1992, Nelson Chatelain and Charlene Chatelain filed for personal bankruptcy. While the bankruptcy proceedings were underway, Mr. Chatelain's company, HGD, won an arbitration award against BCCI. The final order of the bankruptcy court provided that if HGD recovered its judgment against BCCI, then the Chatelains' creditors, including Whitney, could pursue the funds that HGD received by reopening the bankruptcy proceedings. For nearly nineteen years, HGD's efforts to collect the judgment against BCCI were unsuccessful. Finally in 2011, a United States District Court pierced the corporate veil so that HGD could proceed against the Estate of Robert Brindley, Sr. to recover the BCCI judgment. HGD and the Brindley Estate settled the matter while the district court opinion was on appeal. Whitney then reopened the bankruptcy proceedings and recovered a significant portion of the settlement that the Brindley Estate had paid to HGD.

HGD bases its current suit on the circumstances of the settlement between HGD and the Brindley Estate and Whitney's reopening of the Chatelains' bankruptcy proceedings. During the settlement negotiations between HGD and the Brindley Estate, counsel for the Brindley Estate and Jeffery Brindley contacted counsel for Whitney to make an offer to purchase Whitney's bankruptcy claim against the Chatelains. Discussions among the Brindley Estate, Jeffery Brindley, and Whitney—which were not disclosed to HGD while HGD and the Brindley Estate negotiated a settlement—yielded a sharing agreement. The sharing

agreement provided that the Brindley Estate would pay the attorney's fees for reopening the bankruptcy proceedings against the Chatelains and Whitney would equally divide any recovery through the bankruptcy proceedings with the Brindley Estate. Jeffery Brindley guaranteed the performance of the Estate.

HGD contends that the sharing agreement between the Brindley Estate, Jeffery Brindley, and Whitney violated the settlement agreement between HGD and the Brindley Estate. HGD also asserts other claims against Whitney, the Brindley Estate, and Jeffery Brindley, all based on conduct related to the settlement between HGD and the Brindley Estate. Defendants have filed motions to dismiss on three primary grounds: (1) federal bankruptcy law preempts HGD's claims; (2) the Court should abstain from hearing the case; and (3) failure to state a claim, or in the alternative that the claims are not ripe. As discussed below, the Court will grant the motions to dismiss in part and deny them in part.

## II.   <u>Standard of Review</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, at *1 (M.D. Ala. March 26, 2012) (citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). "Where those two requirements are met . . . the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Id.* When deciding a motion to dismiss, the Court must assume the truth of the factual allegations in the complaint and view those allegations in the light most favorable to the plaintiff. *Adinolfe v. United Tech. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014).

Rule 9 provides a heightened pleading requirement for fraud claims. "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  A description of "the circumstances constituting fraud" should include information regarding the nature of the alleged misstatement or omission, "the time and place" of the statement, the identity of the person who provided or omitted material information, and the way in which the plaintiff relied on the misstatement or omission. *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

In assessing the sufficiency of a complaint, the Court may consider only "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  Accordingly, the Court will take judicial notice of the judicial opinions that have been issued in the course of the Chatelains' bankruptcy proceedings and HGD's efforts to recover the arbitration award from BCCI. *See Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases.").  The Court will consider the settlement agreement between HGD and the Brindley Estate (Doc. 17-7) because that agreement is central to and referenced in the complaint.

### III.   Factual Background

#### A. HGD's Arbitration Award Against BCCI

HGD and BCCI executed various agreements in 1989 and 1990 for construction of a condominium development on a municipal golf course in Huntsville, Alabama. (Doc. 1, ¶ 9). Nelson Chatelain is the sole shareholder of HGD. (*Id.* at ¶ 10). Robert Brindley, Sr. solely owned BCCI. (*Id.* at ¶ 9). Dissatisfied with one another's performance under the agreements, the parties entered into an arbitration that resulted in a $376,316.75 award in favor of HGD. (*Id.* at ¶¶ 10–11). HGD filed a complaint in the United States District Court for the Northern District of Alabama to have the arbitration award confirmed, and the Court entered a judgment on the award in December 1992. *See Huntsville Golf Development, Inc. v. Brindley Const. Co., Inc.*, 2011 WL 3420602, at \*2 (M.D. Tenn. Aug. 4, 2011) [hereinafter *HGD 1*]. Seeking to have its judgment satisfied by BCCI assets in Tennessee, HGD registered its judgment and "filed applications for writs of execution . . . requesting garnishment or execution in the United States District Court for the Middle District of Tennessee." *Id.* The Tennessee Middle District Court dismissed the garnishments after a Tennessee bank filed a motion to quash based on its superior interest in BCCI assets. *Id.*

#### B. The Chatelains' Chapter 11 Proceedings

The Chatelains filed for bankruptcy in the Northern District of Alabama in May 1992, in part due to losses they sustained in the dealings between HGD and BCCI.  (Doc. 1, ¶ 13).  Whitney Bank was among the Chatelains' creditors and asserted a claim in the bankruptcy proceeding for more than $1,000,000 based on a judgment in Louisiana.  (*Id.* at ¶ 14).  BCCI was also a party in interest in the bankruptcy proceeding.  (*Id.* at ¶ 15).  HGD was not a party to the Chatelains' bankruptcy and has never filed for bankruptcy.  (*Id.*).

In November 1993, the United States Bankruptcy Court for the Northern District of Alabama confirmed the Chatelains' plan of reorganization.  (*Id.* at ¶ 16). The confirmation order included the following provision:

> [O]ne of the [Chatelains'] corporations, Huntsville Golf Company, of which they are the sole shareholders, has a judgment against Brindley Construction Company in the approximate amount of $350,000.  It should be noted that the debtor, Nelson Chatelain, has an account receivable against this corporation in the approximate amount of $300,000.  The testimony given at the hearing indicated that this judgment cannot be collected because Brindley Construction Company does not have the funds.  It is the opinion of this Court that the debtors should attempt to collect this judgment, and that any funds which are collected shall be subjected to the jurisdiction of this Court and made available for distribution to the unsecured creditors.

(*Id.*).  The Chatelains did not appeal the final order or contest the provision requiring that funds from any future collection of HGD's arbitration award would be used to pay the Chatelains' unsecured bankruptcy creditors.  *See Huntsville Golf*

*Dev., Inc. v. Bank*, No. 5:13-CV-671, 2014 WL 1117640, at \*4 (N.D. Ala. Mar. 19, 2014) [hereinafter *HGD 2*].

### C. HGD Enforces the BCCI Judgment

HGD registered its judgment against BCCI in the United States District Court for the Middle District of Tennessee in 2001. (Doc. 1, ¶ 17). BCCI subsequently "dissolved and ceased operations." *HGD 1*, 2011 WL 3420602, at \*1. In 2008, HGD filed a lawsuit in the Middle District of Tennessee against Robert Brindley, Sr.; Ronald Brindley; and their various corporate entities. In that action, HGD attempted to pierce BCCI's corporate veil to enforce the arbitration judgment. *Id.* By the time the case reached trial in September 2010, Robert Brindley, Sr. was deceased and his estate was substituted as a defendant. (Doc. 1, ¶ 20). The court found that the Brindleys' actions following the confirmation of the arbitration award gave rise to "a strong inference that these actions were taken to perpetuate a fraud against the creditors of BCCI." *HGD 1*, 2011 WL 3420602, at \*21. The court awarded HGD the amount of the original arbitration award plus interest, over $300,000 in attorney's fees, and costs and expenses. (Doc. 1, ¶¶ 21– 22). Both the Brindley Estate and HGD appealed to the United States Court of Appeals for the Sixth Circuit. The parties entered a settlement resolving all claims for $985,000 on November 28, 2011 while the appeals were pending. (*Id.* at ¶¶ 23, 28).

### D. The Settlement Negotiations

Unbeknownst to HGD or the Chatelains, during the settlement negotiations between HGD and the Brindley Estate, Jeffery Brindley and counsel for the Brindley Estate contacted counsel for Whitney Bank and offered to purchase Whitney Bank's bankruptcy claim against the Chatelains. (*Id.* at ¶¶ 42–43). The secret negotiations among the Brindley Estate, Jeffery Brindley, and Whitney that ensued, as well as their final agreement, form the foundation of most of HGD's claims. (*Id.* at ¶¶ 65–67, 70–74, 81–85, 94, 97). HGD alleges that the Brindley Estate and Jeffery Brindley engaged in discussions with Whitney to reopen the bankruptcy proceedings against the Chatelains to recover any funds the Brindley Estate might ultimately pay to HGD in settlement. (*Id.* at ¶¶ 41–50). These discussions began on October 2, 2011 and continued while the Brindley Estate was simultaneously negotiating with HGD to resolve HGD's judgment against the Estate. (*Id.* at ¶¶ 42–55). The final agreement formed by the Brindley Estate, Jeffery Brindley, and Whitney provided that the Estate would pay the attorney's fees for reopening the Chatelains' bankruptcy proceedings on behalf of Whitney, and the Estate and Whitney would split any recovery in the bankruptcy proceedings. (*Id.* at ¶ 57). Jeffery Brindley guaranteed the performance of the Estate. (*Id.*). The Brindley/Whitney negotiations and resulting deal were not

revealed to HGD at any time during the settlement negotiations between HGD and the Brindley Estate.  (*Id.* at ¶ 25).

### E. Whitney Bank Reopens the Bankruptcy Proceedings

Shortly after the Brindley Estate transferred the settlement funds to HGD on December 2, 2012, Whitney Bank filed a motion to reopen the bankruptcy proceedings against the Chatelains.  (*Id.* at ¶ 56).  The bankruptcy court ordered the Chatelains to cause HGD to transfer $510,000—the portion of the settlement proceeds not earmarked for legal fees and expenses—to a trust account.  (*Id.* at ¶ 60).  In February 2013, the bankruptcy court ordered the appointment of a Chapter 11 trustee to distribute the $510,000 pursuant to the 1993 bankruptcy court order. (*Id.* at ¶ 61).  HGD appealed the bankruptcy court order to the district court.  *HGD 2*, 2014 WL 1117640, at *3.

### F. The District Court for the Northern District of Alabama Affirms the Bankruptcy Court's Decision

On March 19, 2014, the United States District Court for the Northern District of Alabama affirmed the bankruptcy court's decision.  *HGD 2*, 2014 WL 1117640, at *14.  This Court, acting through another judge, held that res judicata precluded HGD from collaterally attacking the 1993 confirmation order requiring the HGD/Brindley settlement proceeds to be used to pay the Chatelains' unsecured creditors.  *Id.* at *3.  The Court also rejected HGD's argument that Whitney, as a

10

partner with the Brindley Estate, had released all of its claims against HGD pursuant to the settlement agreement between HGD and the Brindley Estate. *Id.* at *12. The Court rejected that argument, in part, because it found that there was no partnership between Whitney and the Brindley Estate under Louisiana law. *Id.* at *7–9.

HGD moved for rehearing on the issue of whether a partnership existed between Whitney and the Brindley Estate. *Huntsville Golf Dev., Inc. v. Whitney Bank*, No. 5:13-CV-671, 2014 WL 2973106, at *1 (N.D. Ala. June 27, 2014) [hereinafter *HGD 3*]. The Court clarified a key dispute between HGD and the Brindley Estate in its denial of rehearing. HGD's motion was based on language in the Court's opinion finding that there was no partnership between the Brindley Estate and Whitney. *Id.* The Court reconsidered its earlier finding that a partnership did not exist between Whitney and the Brindley Estate under Louisiana law. *Id.* at *2. The Court held in its denial of rehearing that it "need not reach the question of whether or not Whitney Bank and the Estate of Robert Brindley, Sr., formed a partnership under Louisiana law." *Id.* at *4.

### G. Motions to Dismiss

In this action, HGD asserts claims for: (1) breach of contract against the Brindley Estate, based on the Estate's alleged violation of the settlement agreement and mutual release between HGD and the Estate; (2) tortious interference with

contract by Whitney Bank and Jeffery Brindley, based on alleged interference with the settlement agreement; (3) fraud and deceit against the Brindley Estate, based on the Estate's representation that it was relinquishing all present and future claims against HGD and the settlement proceeds; (4) unjust enrichment against the Brindley Estate and Whitney for inequitably benefitting from the bankruptcy proceedings; and (5) conspiracy against the Brindley Estate, Whitney Bank, and Jeffery Brindley for acting together to commit fraud and deceit.  (Doc. 1, ¶¶ 63–97).[1]

The defendants assert that all claims should be dismissed.  Whitney argues that: (1) the bankruptcy code preempts these claims against Whitney, (Doc. 12, p. 10); (2) the Court should abstain, (*Id.* at p. 17); and (3) HGD's state law claims fail to state a claim and, alternatively, are not ripe for adjudication, (*Id.* at p. 27). Jeffery Brindley and the Brindley Estate "fully adopt[] and rel[y] on the Motion and Briefing submitted by Co-Defendant, Whitney Bank."  (Doc. 14, p. 2).  The Brindley Estate and Jeffery Brindley also argued that the action should be consolidated with HGD's bankruptcy appeal.  (*Id.* at p. 3).

---

[1] HGD attempts to allege a conspiracy among the Brindley Estate, Jeffery Brindley, and Whitney to be unjustly enriched.  (Doc. 1, ¶ 97).  Such a cause of action does not appear to be recognized in Tennessee.  In addition, the unlawful conduct required for a civil conspiracy would not seem to be satisfied by a defendant's retention of a benefit willingly conferred by a plaintiff.

Whitney also seeks dismissal on the ground that no partnership existed between Whitney and the Brindley Estate that would allow HGD to succeed on any claims against Whitney. (Doc. 19, pp. 3–4). Whitney contends that:

> [b]efore Huntsville Golf can succeed on any of its claims against Whitney, the Court must find: (i) that a partnership existed between Whitney and the Brindleys at the time of the negotiations which culminated in the execution of the Settlement Agreement between Huntsville Golf and the Brindleys . . . and (ii) that the Brindleys were acting on behalf of the alleged partnership in connection with these negotiations.

(*Id.* at p. 3). The Brindley Estate and Jeffery Brindley assert that every claim against them is based solely on the alleged partnership. (Doc. 40, p. 5). In fact, HGD asserts many of its claims against individual defendants, not simply the alleged partnership, as it clarified in its response to defendants' supplemental briefs in support of their motions to dismiss. (Doc. 41, pp. 6–12).

The Court held a motion hearing on June 26, 2014 for each party to present arguments on the defendants' motions to dismiss. (Doc. 46). On the basis of the parties' statements and their written submissions for the record, the Court takes up the defendants' motions to dismiss.

## IV.  Discussion

### A. Motion to Consolidate, Abstention, and Preemption

The defendants have raised a number of procedural challenges to HGD's lawsuit.  The Court finds none of them persuasive.

Initially, the Brindleys filed a motion to consolidate this action with the then-pending appeal of the bankruptcy court order in this Court before a different judge.  (Docs. 13, 14).  Alternatively, the defendants asked the Court to abstain because of the bankruptcy proceedings.  That bankruptcy appeal has concluded, *see HGD 3*, 2014 WL 2973106, at *1 (denying rehearing on decision affirming the bankruptcy court's opinion), and HGD has represented to the Court that it does not plan to challenge this Court's final order affirming the bankruptcy court order. (Doc. 45, ¶ 3).  Therefore, the Brindleys' motion to consolidate is moot.  The conclusion of the bankruptcy appeal also moots the defendants' arguments that HGD's claims are not ripe and that the Court should abstain under the *Colorado River* doctrine.

Alternatively, the defendants argue that the Bankruptcy Code preempts HGD's claims.  The Court disagrees.  As a creditor, Whitney pursued its claims under the bankruptcy court's order, but HGD's claims are based on conduct outside the bankruptcy proceedings—conduct that preceded the reopening of the bankruptcy proceedings.  (Doc. 1, ¶ 26).  Whitney cites two primary cases—one from the Ninth Circuit and the other from the Sixth—in support of its preemption

argument.  (Doc. 12, pp. 14–15).  Neither case requires or even suggests the result that Whitney advocates in its motion to dismiss.

In *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir. 1996), a plaintiff-debtor asserted malicious prosecution claims against the defendant-creditors.  In *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000), the plaintiff-debtors brought state law claims based on creditors allegedly violating an automatic stay of the bankruptcy proceedings and other provisions of the Bankruptcy Code.  In both cases, the appellate courts held that the Bankruptcy Code preempted the state law claims because the plaintiffs asserted the claims based on the parties' actions within the bankruptcy proceedings.  By contrast, HGD's claims are not premised on violations of the Bankruptcy Code or otherwise based on conduct within the bankruptcy proceedings.  Because the Court rejects that defendants' procedural arguments, the Court turns to the merits of the parties' Rule 12(b)(6) arguments.  This requires the Court to apply choice of law principles.

### B. Choice of Law

Federal courts apply the choice of law doctrine of the state in which they sit. *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992).  Accordingly, Alabama choice of law doctrine applies to all claims in the action.  Because HGD asserts various claims, some sounding in contract and others in tort, a different

choice of law analysis applies to each type of claim.   "Alabama applies the traditional doctrines of *lex loci contractus* to contract claims and *lex loci delicti* to tort claims."   *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004).   This means that a "contract is governed by the laws of the state where it is made" unless the parties provided in the contract for another state's law to apply.   *Id.* (quoting *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991)).   For tort claims, the Court must "determine the substantive rights of an injured party according to the law of the state where the injury occurred."   *Id.* (quoting *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)).

Tennessee law governs HGD's breach of contract and unjust enrichment claims.   The settlement agreement between the Brindley Estate and HGD contains a choice of law provision, which states that the "[a]greement shall be governed by and construed and enforced in accordance with the laws of the State of Tennessee." (Doc. 17-7, p. 6).   Given its narrow scope, the choice of law provision governs only HGD's contract-based claims against the Brindley Estate.   *See, e.g.*, *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) (citing *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300–01 (11th Cir.

2003)).[2]  HGD's unjust enrichment claim is governed by the law of Tennessee

because unjust enrichment is an equitable remedy available to plaintiffs who fail to

prove a breach of contract.  *See, e.g.*, *Trumpet Vine Investments, N.V. v. Union

Capital Partners I, Inc.*, 92 F.3d 1110, 1119 (11th Cir. 1996) (applying Florida's

choice of law doctrine for contracts to an unjust enrichment claim); *Doe v. HCA

Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197 (Tenn. 2001) ("Where a contract

is invalid or unenforceable, the court may impose a contractual obligation when the

defendant will be unjustly enriched absent a quasi-contract obligation").[3]

Alabama law governs HGD's tort claims because Alabama is the place of

injury.  *See, e.g.*, *Ex parte Green Tree Fin. Corp.*, 723 So. 2d 6, 10 (Ala. 1998).

HGD asserts its fraud and deceit claims under Alabama statutes.  Ala. Code §§ 6-

5-103; 6-5-104.    The civil conspiracy claims are governed by the law of Alabama

because fraud and deceit are the underlying wrongs on which the conspiracy is

---

[2] In *Cooper*, the Eleventh Circuit compared a narrow choice-of-law provision that applied only to contract claims with a broader provision that applied to any claims related to the agreement. As an example of a narrow choice-of-law provision, the court used the provision from *Green Leaf*, which stated, "[t]his Release shall be governed and construed in accordance with the laws of the State of Delaware."  341 F.3d at 1298.  By contrast, the Eleventh Circuit held that the provision at issue in *Cooper*, which stated, "all disputes arising out of or in connection with" the agreement "shall be construed in accordance with and shall be governed by Dutch law," was broad enough to encompass any related claims.  575 F.3d at 1162.

[3] Although HGD assumed in its brief that Alabama law applies to its unjust enrichment claim, that assumption is incorrect.  Alabama choice of law doctrine, as well as the choice of law provision in the settlement agreement, requires a finding that this claim is governed by the law of Tennessee.

based.  (Doc. 1, ¶ 97).  The Court will discuss HGD's contract-based claims first, and then turn to HGD's tort claims.

## C. Contract-based Claims

### i.  Breach of Contract by the Estate of Robert Brindley, Sr.

"To show a breach of contract under Tennessee law, a party must prove '(1) the existence of a contract, (2) breach of the contract, and (3) damages [that] flow from the breach.'"  *Hinton v. Wachovia Bank of Delaware Nat. Ass'n*, 189 Fed. Appx. 394, 398 (6th Cir. 2006) (quoting *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC, Inc.*, 79 F.3d 496, 514 (6th Cir. 1996)). Tennessee courts have "consistently imposed the implied covenant of good faith and fair dealing upon *every contract*."  *Dick Broadcasting Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 661 (Tenn. 2013).

The Brindley Estate argues that HGD's breach of contract claim must be premised on a partnership between the Brindley Estate and Whitney under Louisiana law.  (*Id.* at 3).  This is not accurate.  HGD entered into a settlement agreement with the Brindley Estate, an agreement that HGD claims the Estate breached.  HGD does not need a favorable finding on the issue of whether a partnership was formed to state a claim for breach of contract against the Brindley Estate.

HGD has adequately alleged that it entered a valid contract with the Brindley Estate and that the Estate breached the contract by violating the release provision and the implied covenant of good faith and fair dealing. (Doc. 1, ¶ 67). HGD also alleges it was damaged by the breach of contract. (*Id.* at ¶ 68). HGD's assertion is sufficient to survive a motion to dismiss, but the issue of damages requires additional analysis, which is set out in a separate section below.[4]  The Brindley Estate largely fails to address HGD's breach of contract allegation, instead relying on Whitney's broad arguments for dismissal. The Court denies the Brindley Estate's motion to dismiss.

### ii. Unjust Enrichment by the Estate of Robert Brindley, Sr. and Whitney Bank

Under Tennessee law, "[t]he elements of an unjust enrichment claim are 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)). In addition, for a party to recover on a claim of unjust enrichment "there must be no existing, enforceable contract between the parties covering the same subject matter." *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808,

---

[4] *See* Section IV.F.

824 (Tenn. Ct. App. 2011) (citing *Robinson v. Durabilt Mfg. Co.*, 260 S.W.2d 174, 175 (Tenn. 1953)).

HGD repeatedly alleges the existence and enforceability of the settlement agreement with the Brindley Estate. (Doc. 1, ¶ 28–33, 53–55). Therefore, taking the allegations in the complaint as true, there is an "existing, enforceable contract between the parties covering the same subject matter" as HGD's unjust enrichment claim, and HGD must seek its remedy under the contract with the Brindley Estate. Even if HGD had pled in the alternative that the settlement agreement with the Brindley Estate is invalid, HGD's unjust enrichment claim would fail. Apart from the mutual release provision of the settlement agreement, HGD has alleged nothing that would prevent the Brindley Estate from acquiring and enforcing a portion of Whitney's claim in the bankruptcy proceedings. If there were no legal obstacles to the Estate's participation in the bankruptcy proceedings, then the Estate could not have been unjustly enriched.

Because Whitney became enriched by exercising its rights under a valid bankruptcy court order, HGD's claim against Whitney for unjust enrichment also fails. *See Ferguson v. Nationwide Prop. & Cas. Ins. Co.*, 218 S.W.3d 42, 51 (Tenn. Ct. App. 2006) ("'The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant must be unjust.'") (quoting

*Paschall's, Inc.*, 407 S.W.2d at 155).  Therefore, the Court grants Whitney's and the Brindley Estate's motions to dismiss the unjust enrichment claim.

### D. Tort Claims

#### i. Tortious Interference With Contract by Whitney Bank and Jeffery Brindley

To state a claim for tortious interference with a contract or business relationship, a plaintiff must allege: (1) the existence of a contract or business relationship; (2) the defendant's knowledge of the contract or business relationship; (3) that the defendant was a stranger to the contract or business relationship; (4) intentional interference by the defendant with the contract or business relationship; and (5) damage to the plaintiff as a result of the interference. *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009); *see also Waddell & Reed, Inc. v. United Inv. Life Ins. Co.*, 875 So. 2d 1143, 1153 (Ala. 2003) (quoting *Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002)).  Concerning the requirement that the party charged with tortious interference must be a "stranger" to the contract, the Alabama Supreme Court observed in *Parsons*:

> One is not a stranger to the contract just because one is not a party to the contract . . . . When tripartite relationships exist and disputes arise between two of the three parties, then a claim alleging interference by the third party that arises from conduct by the third party that is appropriate under its contract with the other two parties is not recognized.

849 So. 2d at 946–47 (quoting *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203, 212 (Ala. 2001)) (internal quotation marks and alterations omitted).   In *Waddell*, the court cited *Parsons*, explaining that "[a] defendant is a party in interest to a [business relationship or contract] if the defendant has any beneficial or economic interest in, or control over, that relationship."   875 So. 2d at 1143.

HGD has failed to plead that Whitney Bank was a stranger to the business relationship between HGD and the Brindley Estate.   In fact, taking the facts in the complaint as true, Whitney Bank could not possibly have been a stranger to the business relationship because it held a "beneficial or economic interest in, or control over, th[e] relationship" by virtue of the 1993 confirmation order.   *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1302 (11th Cir. 2010) (citing *Waddell*, 875 So. 2d at 1154); (*see also* Doc. 1, ¶¶ 14, 16).   As Whitney correctly notes, the crux of HGD's claims against Whitney is that the bank improperly interfered with the settlement agreement because Whitney had a "beneficial or economic interest" in the outcome.   (Doc. 12, pp. 30–31).

HGD has also failed to plead that Jeffery Brindley was a stranger to HGD's business relationship with the Brindley Estate.   Although the facts alleged in the complaint do not clearly indicate whether Mr. Brindley held a beneficial or economic interest in the settlement negotiations between HGD and the Brindley Estate, the burden at this stage of the proceedings rests on HGD to affirmatively

22

plead all the elements of its claim.  The complaint at least suggests that Jeffery Brindley was involved personally or through counsel in both the settlement discussions between the Brindley Estate and HGD and the negotiations between the Brindley Estate and Whitney.  (*See* Doc. 1, ¶¶ 42, 47, 57, 74).  If Jeffery Brindley was acting as the Brindley Estate's agent in these matters, he cannot be liable for tortious interference.  *See Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004) ("[T]he alleged interferer is not a stranger to the contract and thus not liable for tortious interference where the alleged interferer was the agent for one of the parties to the contract . . . .") (quoting *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 503 S.E.2d 278, 282 (1998)).  The complaint also suggests that Jeffery Brindley had a "beneficial or economic interest" in any transfer of funds that served to reduce or enhance the size of the Brindley Estate.  (*See* Doc. 1, ¶ 74). Therefore, the Court grants Whitney's and Mr. Brindley's motions to dismiss the tortious interference claim.

### ii.  Fraud and Deceit by the Brindley Estate

Alabama Code Section 6-5-103 provides:

Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action.  In all cases of deceit, knowledge of a falsehood constitutes an essential element.  A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

23

To state a claim for deceit, the plaintiff must prove that the defendant willfully or recklessly misrepresented or suppressed material facts with the intent to mislead. *Hughes v. Hertz Corp.*, 670 So. 2d 882, 888 (Ala. 1995).  To state a claim for fraud, the plaintiff must show "(1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance." *George v. Associated Doctors Health and Life Ins. Co.*, 675 So. 2d 860, 862 (Ala. 1996).[5]  The false representation must be made willfully, recklessly, or mistakenly. *Id.*  Allegations of fraud must also meet the heightened pleading standard under Rule 9(b).  Rule 9 of the Federal Rules of Civil Procedure:

> requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*FindWhat*, 658 F.3d at 1296.

HGD has alleged facts that, if true, state a claim for fraud and deceit against the Brindley Estate.  According to HGD, the Brindley Estate represented "during the course of the settlement negotiations that [the Estate] intended to and would completely release HGD from any and all past, present or future claims and would

---

[5] *See* Section IV.F for a discussion of the element of damages.

not interfere with HGD's right to the Settlement Proceeds." (Doc. 1, ¶ 81). At the same time, the Brindley Estate was negotiating with Whitney to recover a portion of the settlement proceeds through the Chatelains' bankruptcy. (*Id.* at ¶ 41–50).[6] HGD has pled this claim with the specificity required by Rule 9(b), and therefore the Court denies the Brindley Estate's motion to dismiss this claim.

To the extent HGD attempts to assert this claim against any party other than the Brindley Estate, HGD has failed to satisfy the pleading standards of Federal Rule of Civil Procedure 9(b). (*See id.* at ¶¶ 87–89). HGD fails to specify any allegedly fraudulent communications by Whitney. HGD similarly fails to allege that Jeffery Brindley made any fraudulent communications. HGD premises its fraud and deceit claim entirely on communications between the Brindley Estate and HGD. (*Id.* at ¶¶ 81–85). No facts in the complaint suggest that Whitney ever represented to HGD that it would forfeit its legitimate bankruptcy claim against the Chatelains. Accordingly, the Court will dismiss all fraud and deceit claims against any party except the Brindley Estate.

---

[6] In its complaint, HGD provides a detailed description of how the Brindley Estate willfully withheld material information from HGD during the settlement negotiations. (Doc. 1, ¶¶ 25, 41–50, 81–84). However, HGD fails to allege that the Brindley Estate had a duty to disclose its discussions with Whitney. Therefore, to the extent that HGD attempts to assert a claim based on omissions by the Estate, the claim fails. *See CNH America, LLC v. Ligon Capital, LLC*, 160 So. 3d 1195, 1201 (Ala. 2013) ("The elements of a cause of action for fraudulent suppression are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.") (quoting *Lambert v. Mail Handlers Benefit Plan*, 682 So. 2d 61, 63 (Ala. 1996)) (internal quotation marks omitted).

### iii. Conspiracy by the Brindley Estate, Whitney Bank, and Jeffery Brindley

"Civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means."  *Hooper v. Columbus Regional Healthcare System, Inc.*, 956 So. 2d 1135, 1141 (Ala. 2006) (quoting *Keith v. Witt Auto Sales, Inc.*, 578 So. 2d 1269, 1274 (Ala. 1991)).  "The gist of an action alleging civil conspiracy is not the conspiracy itself, but rather, the wrong committed."  *Keith*, 578 So. 2d at 1274.

HGD has alleged sufficient facts to sustain its civil conspiracy claim. Because the fraud and deceit claim will go forward against the Brindley Estate, an underlying wrong exists to support a civil conspiracy claim against the Brindley Estate, Jeffery Brindley, and/or Whitney.  HGD has alleged that the Brindley Estate, Jeffery Brindley, and Whitney were part of a coordinated effort to misrepresent material facts to HGD during its settlement negotiations with the Brindley Estate.  (Doc. 1, ¶¶ 41–50).  HGD also has alleged that it was damaged by those misrepresentations.  (*Id.* at ¶¶ 83, 85).[7]  Therefore, the Court denies the motion to dismiss HGD's civil conspiracy claim.

### E. Partnership Between Whitney and the Brindley Estate

HGD states many of its legal claims against "the Whitney/Brindley partnership."  (*See, e.g.*, *id.* at ¶¶ 81, 88, 94).   The existence of this alleged

---

[7] *See* Section IV.F for a discussion of the element of damages.

partnership was addressed twice during the bankruptcy appeal.  *See HGD 2*, 2014 WL 1117640, at *6–9; *HGD 3*, 2014 WL 2973106, at *1–4.  Ultimately, the existence of a partnership was found to be irrelevant to the resolution of the bankruptcy appeal.  *HGD 3*, 2014 WL 2973106, at *1.  The Court finds persuasive the reasoning contained in the order denying HGD's motion for rehearing.  *See id.* at *3–4.

HGD's claims for tortious interference with contract, fraud and deceit, and conspiracy to commit fraud and deceit relate to conduct that occurred during HGD's settlement negotiations with the Brindley Estate.  (Doc. 1, ¶¶ 25, 41).  Those negotiations ended and the settlement agreement was executed on November 28, 2011.  (*Id.* at ¶ 28).  According to HGD, the partnership agreement between Whitney and the Brindley Estate was signed on December 2, 2011.  (*Id.* at ¶ 34); *see also HGD 3*, 2014 WL 2973106, at *4 (HGD "does not maintain, however, that Whitney Bank and the Brindley Estate formed their supposed partnership until after the settlement.").  Because the Whitney/Brindley partnership was not in existence during the relevant period, it could not have committed the acts that HGD attributes to it.

Only HGD's claim for breach of contract relates to conduct that occurred after the execution of the settlement agreement.  However, even assuming a breach of contract during a time when the Whitney/Brindley partnership was in existence,

the partnership would not be liable for the breach.  The Brindley Estate, not the Whitney/Brindley partnership, executed the release provision of the settlement agreement, and there is no reason to attribute the Estate's release of claims to a later-formed partnership.   Therefore, all claims against the Whitney/Brindley partnership will be dismissed.

### F. Damages

To state claims for breach of contract, tortious interference with contract, fraud and deceit, or civil conspiracy, HGD must plausibly allege that it was damaged by the conduct of which it complains.   *See, e.g., C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 677 (Tenn. Ct. App. 2007) (listing damages as an element of breach of contract); *White Sands*, 32 So. 3d at 14 (listing damages as an element of tortious interference with contract); *George*, 675 So. 2d at 862 (listing damages as an element of fraud); *Phillips v. Mortgage Elec. Registration Sys., Inc.*, No. 5:09-CV-2507, 2013 WL 1498956, *13 (N.D. Ala. April 5, 2013) (stating that the existence of a civil conspiracy depends upon the existence of an underlying wrong) (citing *Hooper*, 956 So. 2d at 1141).  With the possible exception of the breach of contract claim against the Brindley Estate, the injuries alleged by HGD appear insufficient to support anything more than an award of nominal damages.  In its complaint, HGD describes the damages HGD has suffered as "including the seizure of the Settlement Proceeds by the

28

Bankruptcy Court, attorney's fees and expenses, [and] deprivation of the opportunity to recover the full amount of its Judgment in the Tennessee Litigation and pursue its appellate rights in regards to elements of recovery denied by the United States District Court for the Middle District of Tennessee." (Doc. 1, ¶ 98). The Court will examine each form of damages in turn.

### i. Seizure of the Settlement Proceeds by the Bankruptcy Court

HGD experienced a loss when the bankruptcy court ordered it to transfer $510,000 from the Tennessee settlement proceeds to the Chapter 11 trustee. (*Id.* at ¶ 61). But not every loss constitutes legal damages. "There can be no legal claim for damages to the person or property of any one except as it follows from the breach of a legal duty, and whatever damage results from doing that which is lawful does not lay the foundation of an action." *Twine v. Liberty Nat. Life Ins. Co.*, 311 So. 2d 299, 302 (Ala. 1975) (internal citation omitted); *see also Reid v. Memphis Mem'l Park*, 5 Tenn. App. 105, 119–20 (1927) ("It is a maxim of the law that damage without wrong does not constitute a cause of action, in other words an act done, causing damage which the law will redress, must not only be hurtful, but wrongful."). It is not enough for HGD to allege that it "suffered a loss, detriment or injury." *Rayford v. Rayford*, 456 So. 2d 833, 834 (Ala. Civ. App. 1984). HGD must also allege a causal connection between the harm HGD suffered and the "unlawful act or omission or negligence of another." *Id.* HGD cannot meet this

standard with regard to the seizure of the settlement proceeds because the bankruptcy court did not act unlawfully.   Likewise, the Chatelains' unsecured creditors did not act unlawfully by attempting to have their claims satisfied as provided for in the 1993 bankruptcy confirmation order.

However, the Brindley Estate does not occupy the same position as the unsecured creditors.   HGD alleges that—unlike the unsecured creditors—the Brindley Estate executed a release of "all claims, past, present and future, direct and indirect, that the Estate of Robert Brindley may have against HGD or the Settlement Proceeds." (Doc. 1, ¶ 65; *see also id.* at ¶ 29).  Taking this allegation as true for the purposes of the present motions to dismiss, the Brindley Estate acted unlawfully when it used the Chatelains' bankruptcy proceedings to recover a portion of the settlement proceeds the Estate paid to HGD.  Yet, even presuming unlawful action by the Brindley Estate does not resolve the issue posed by HGD's assertion of damages.

"[T]he purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed."  *Riad v. Erie Ins. Exch.*, 436 S.W.3d 256, 274 (Tenn. Ct. App. 2013) (internal quotation marks omitted).  The only difference between HGD's current position and the position HGD would have enjoyed if the settlement agreement had been performed appears to be that HGD would not be

indirectly paying a portion of the settlement proceeds to the Brindley Estate. Scrupulous adherence to the settlement agreement would not have prevented the bankruptcy court from seizing the settlement proceeds and distributing those funds to the Chatelains' unsecured creditors. Because both the alleged breach and full performance of the settlement agreement leave HGD without possession of the settlement proceeds, HGD would seem to be foreclosed from claiming compensatory damages from the Brindley Estate based on the bankruptcy court's actions.

### ii.  Attorney's Fees and Expenses

HGD next alleges that it was damaged by being required to incur attorney's fees and expenses to secure its legal rights. (Doc. 1, ¶¶ 62, 68, 75, 85, 98). "'In Alabama and most other jurisdictions, the general rule is that attorney's fees and expenses of litigation are not recoverable as damages, in [the] absence of a contractual or statutory duty, other than [by] a few recognized . . . equity principles.'"  *Tolar Const., LLC v. Kean Elec. Co.*, 944 So. 2d 138, 152 (Ala. 2006) (quoting *Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C.*, 674 So. 2d 1287, 1290 (Ala.1995)); *see also Fossett v. Gray*, 173 S.W.3d 742, 752 (Tenn. Ct. App. 2004) ("In the absence of a statutory provision or a contractual agreement between the parties, attorney fees, incurred by a litigant, are not a proper element of damages.").  The settlement agreement between HGD and the

Brindley Estate states the parties "shall be entitled to all reasonable court costs, attorney's fees, and expenses incurred in enforcing this Agreement."  (Doc. 1, ¶ 31).  HGD does not assert any contractual or statutory grounds that would entitle it to attorney's fees for successfully litigating any of the other counts in the complaint.  Accordingly, damages in the form of attorney's fees and expenses are available only with respect to the breach of contract claim against the Brindley Estate.

### iii.  Deprivation of the Opportunity to Recover the Full Amount of HGD's Judgment in the Tennessee Litigation and Pursue HGD's Appellate Rights

As a final form of damages, HGD asserts that it was prevented from recovering the full amount of its judgment against BCCI and from pursuing its appellate rights with regards to elements of recovery denied by the United States District Court for the Middle District of Tennessee.  (*Id.* at ¶ 98).  While a plaintiff is not required to calculate the amount of its damages with absolute precision, "[t]he existence of damages cannot be uncertain, speculative, or remote." *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012) (quoting *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 10 (Tenn.2008)); *see also Jones v. Sherrell*, 52 So. 3d 527, 532 (Ala. Civ. App. 2010) ("Damages may not be based upon speculation.") (citing *Industrial Chemical & Fiberglass Corp. v. Chandler*, 547 So. 2d 812 (Ala.1988)).  The facts alleged by HGD demonstrate that recovering the full

amount of its judgment against BCCI would not have materially altered HGD's position and that any attempt to determine compensatory damages owed to HGD would be entirely speculative.

In 1992, HGD received an arbitrator's award against BCCI in the amount of $376,316.75.  (Doc. 1, ¶ 11).  This award was confirmed and made a judgment of the United States District Court for the Northern District of Alabama, then registered in the Middle District of Tennessee, and finally entered as a judgment against the Estate of Robert Brindley, Sr. and various entities controlled by the Brindley family. (*Id.* at ¶¶ 11, 17, 21).  When the United States District Court for the Middle District of Tennessee entered judgment against the Brindleys, the court also ruled that interest would be due on the judgment "at the rate of '3.72% compounded annually from December 24, 1992, until the Judgment is paid in full.'"  (*Id.* at ¶ 22).[8]  On December 2, 2012, the Brindleys wired $985,000 into the trust account of HGD's counsel, and the settlement agreement between HGD and the Brindleys became final.  (*Id.* at ¶ 28, 32).

Simple calculation shows that $376,316.75 compounded annually for twenty years at an interest rate of 3.72% will grow to be approximately $780,000. Whitney Bank asserted a claim in the Chatelains' bankruptcy of over $1,000,000 based on a judgment obtained from the United States District Court for the Eastern

---

[8] The court also awarded HGD $19,908.66 in total costs and $327,283 in attorney's fees.  (Doc. 1, ¶ 21–22).

District of Louisiana.  (*Id.* at ¶ 14).  Based on Whitney's claim, the bankruptcy court granted Whitney's motion to reopen the bankruptcy proceedings and froze $510,000 of the settlement proceeds, allowing the remainder to be used to pay HGD's legal fees and expenses.  (*Id.* at ¶ 60).  If $780,000, rather than $510,000, had been available to the bankruptcy court after the cost of HGD's litigation against the Brindleys had been accounted for, the outcome would have been exactly the same from HGD's perspective.  In either case, the recovery from the Brindleys would not have been sufficient to satisfy Whitney's claim, let alone the claims of the Chatelains' other unsecured creditors.  On such facts, the Chatelains' creditors might complain of injury, but HGD may not.   The existence of compensable damage to HGD is not just uncertain, rather it seems certain not to have occurred at all.

In addition, nothing in HGD's complaint suggests that full vindication of its appellate rights would have altered this calculation in any significant respect.  Even if such a suggestion were present, a fact finder would be required to predict the actions of the United States Court of Appeals for the Sixth Circuit, and possibly the Tennessee District Court on remand, in order to determine the appropriate amount of compensation.  The injury of which HGD complains is simply too speculative to support compensatory damages.

Even though HGD does not appear to be entitled to compensatory damages, the Court will not dismiss HGD's complaint in its entirety.  Taking HGD's factual assertions as true, HGD could be awarded nominal damages for the invasion of legal rights where no actual damages can be shown.  *See Roberson v. C.P. Allen Const. Co.*, 50 So. 3d 471, 477 (Ala. Civ. App. 2010) ("Nominal damages are not based on the extent of any loss sustained as a result of the breach but are awarded in recognition of the invasion of the legal rights of the plaintiff."); *Womack v. Ward*, 186 S.W.2d 619, 620 (Tenn. Ct. App. 1944) ("Nominal damages are given, not as an equivalent for the wrong, but in recognition of a technical injury and by way of declaring a right, or as a basis for taxing costs; and are not the same as damages small in amount.") (citation omitted).  Because HGD has alleged an invasion of its legal rights sufficient to support an award of nominal damages, its claims for breach of contract, fraud and deceit, and civil conspiracy will not be dismissed at this stage for failure to satisfy the element of damages that each claim contains.  The Court will not dismiss HGD's claims for punitive damages because under Alabama law an award of nominal damages may support a punitive damages award in a tort action.  *Life Ins. Co. of Georgia v. Smith*, 719 So. 2d 797, 806 (Ala. 1998) ("[A] jury's verdict [must] specifically award either compensatory damages or nominal damages in order for an award of punitive damages to be upheld.").

**V.    Conclusion**

For the reasons discussed above, the Court grants in part and denies in part the motions to dismiss.  The Court DENIES the motion to dismiss HGD's breach of contract claim against the Brindley Estate; DENIES the motion to dismiss HGD's fraud and deceit claim against the Brindley Estate; and DENIES the motions to dismiss the civil conspiracy to commit fraud and deceit claim against the Brindley Estate, Jeffery Brindley, and Whitney.  The Court GRANTS the motions to dismiss all other claims brought by HGD and DISMISSES those claims WITHOUT PREJUDICE.

**DONE** and **ORDERED** this September 28, 2015.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE