# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| HUNTSVILLE GOLF DEVELOPMENT, INC., | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  5:13-cv-00870-MHH** |
| v. | } | |
| | } | |
| ESTATE OF ROBERT BRINDLEY, SR., et al., | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

This case is before the Court on the parties' cross-motions for summary judgment.  (Docs. 124, 127).  Plaintiff Huntsville Golf Development, Inc. ("HGD") sued the Estate of Robert Brindley, Sr. (through its executors, Ronald Brindley and Richard White); Whitney Bank; and Jeffrey Brindley,[1] an heir of Robert Brindley, Sr.[2]  This lawsuit is an outgrowth of dealings that took place more than twenty years ago between HGD, solely owned by Nelson Chatelain, and the Brindley

---

[1] The record contains references to "Jeffery Brindley" and to "Jeffrey Brindley."  For consistency in this opinion, the Court refers to Mr. Brindley as "Jeffrey."

[2] In its complaint, HGD also asserted claims against an alleged partnership between Whitney Bank and the Brindley Estate.  (Doc. 1).  The Court dismissed HGD's claims against the alleged "Whitney/Brindley partnership."  (Doc. 56, p. 28).

Construction Company, Inc. ("BCCI"), solely owned by Robert Brindley, Sr. at the time.

In 1992, Nelson Chatelain and Charlene Chatelain filed for personal bankruptcy. While the bankruptcy proceedings were underway, Mr. Chatelain's company, HGD, won an arbitration award against BCCI. The final order of the bankruptcy court provided that if HGD recovered its judgment against BCCI, then the Chatelains' creditors, including Whitney, could pursue the funds that HGD received by reopening the bankruptcy proceedings. For nearly nineteen years, HGD's efforts to collect the judgment against BCCI were unsuccessful. Finally in 2011, a federal district court pierced the corporate veil so that HGD could proceed against the Estate of Robert Brindley, Sr. to recover the BCCI judgment. HGD and the Brindley Estate settled the matter while the district court decision was on appeal. Whitney then reopened the bankruptcy proceedings and recovered a significant portion of the settlement proceeds that the Brindley Estate had paid to HGD.

HGD bases its current suit on the circumstances of the settlement between HGD and the Brindley Estate and Whitney's reopening of the Chatelains' bankruptcy proceedings. During the settlement negotiations between HGD and the Brindley Estate, counsel for the Brindley Estate and Jeffrey Brindley contacted counsel for Whitney to make an offer to purchase Whitney's bankruptcy claim

against the Chatelains. Discussions among the Brindley Estate, Jeffrey Brindley, and Whitney—which were not disclosed to HGD while HGD and the Brindley Estate negotiated a settlement—yielded a sharing agreement. The sharing agreement provided that the Brindley Estate would pay the attorney's fees for reopening the bankruptcy proceedings against the Chatelains and Whitney would equally divide any recovery through the bankruptcy proceedings with the Brindley Estate. Jeffrey Brindley guaranteed the performance of the Estate.

HGD contends that the sharing agreement between the Brindley Estate, Jeffrey Brindley, and Whitney violated the settlement agreement between HGD and the Brindley Estate. HGD also asserts claims for fraud and deceit against the Brindley Estate and conspiracy to commit fraud and deceit against Whitney, the Brindley Estate, and Jeffrey Brindley, all based on conduct related to the settlement between HGD and the Brindley Estate. In its counterclaim, the Estate alleges that HGD breached the release provisions of the settlement agreement.

Pursuant to Federal Rule of Civil Procedure 56, the defendants ask the Court to enter judgment in their favor on HGD's claims. (Doc. 124). HGD asks the Court to enter judgment in its favor on its breach-of-contract claim and on the Estate's counterclaim. (Doc. 127). For the reasons discussed below, the Court will grant the defendants' motion for summary judgment, and the Court will grant HGD's motion for summary judgment on the defendant's counterclaim.

## II.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A).  "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).  When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party.  *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

"In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination [of] whether questions of material fact exist."  *Ga. State Conference of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015) (quoting *Lac Courte*

*Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)) (internal quotation marks and brackets omitted). "If both parties proceed on the same legal theory and rely on the same material facts . . . the case is ripe for summary judgment." *Ga. State Conf. of NAACP*, 775 F.3d at 1345 (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)) (internal quotation marks omitted).

## III. FACTUAL BACKGROUND

### A. HGD's arbitration award against BCCI

HGD and BCCI executed various agreements in 1989 and 1990 for construction of a condominium development on a municipal golf course in Huntsville, Alabama. (Doc. 125, p. 6; Doc. 128, pp. 1–2). Nelson Chatelain is the sole shareholder of HGD. (Doc. 125, pp. 4, 6; Doc. 128, p. 2). Robert Brindley, Sr. solely owned BCCI. Dissatisfied with one another's performance under the agreements, the parties entered into an arbitration that resulted in a $376,316.75 award in favor of HGD. (Doc. 126-1, p. 230); *see Huntsville Golf Dev., Inc. v. Brindley Constr. Co., Inc.*, 2011 WL 3420602, at *2 (M.D. Tenn. Aug. 4, 2011) [hereinafter *HGD 1*]. HGD filed a complaint in the United States District Court for the Northern District of Alabama to have the arbitration award confirmed, and the Court entered a judgment on the award in December 1992. (Doc. 31 in Case No.

92-cv-02008-ELN).[3]  Seeking to have its judgment satisfied by BCCI assets in Tennessee, HGD registered its judgment and "filed applications for writs of execution . . . requesting garnishment or execution in the United States District Court for the Middle District of Tennessee." *HGD 1*, 2011 WL 3420602, at *2. The Tennessee district court dismissed the garnishments after a Tennessee bank filed a motion to quash based on its superior interest in BCCI's assets. *Id.*

### B. The Chatelains' Chapter 11 proceedings

The Chatelains filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama in May 1992, in part due to losses they sustained in the dealings between HGD and BCCI.  (Doc. 126-1, pp. 31, 33; *see also* Doc. 128, p. 2).  Whitney Bank, one of the Chatelains' creditors, asserted an unsecured claim in the bankruptcy proceeding for more than $1,000,000 based on a judgment in Louisiana.  (Doc. 126-1, p. 177; Doc. 127-17, p. 6; Doc. 126-7, p. 2). BCCI was also a party in interest in the bankruptcy proceeding.  (*See* Doc. 127-3, p. 2; Doc. 128, p. 2).  HGD was not a party to the Chatelains' bankruptcy and has never filed for bankruptcy.  (*See generally* Case No. 92-81161-EDB-11).[4]

---

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, "[a] court may take judicial notice of its own records and the records of inferior courts."  *Bobadilla v. Aurora Loan Servs., LLC*, 478 Fed. Appx. 625, 627 (11th Cir. 2012) (quoting *U.S. v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir.1987)).

[4] *See* n. 3, above.

In November 1993, the United States Bankruptcy Court for the Northern District of Alabama confirmed the Chatelains' plan of reorganization. (Doc. 127-4, pp. 1–4). The confirmation order included the following provision:

> [O]ne of the [Chatelains'] corporations, Huntsville Golf Company, of which they are the sole shareholders, has a judgment against Brindley Construction Company in the approximate amount of $350,000. It should be noted that the debtor, Nelson Chatelain, has an account receivable against this corporation in the approximate amount of $300,000. The testimony given at the hearing indicated that this judgment cannot be collected because Brindley Construction Company does not have the funds. It is the opinion of this Court that the debtors should attempt to collect this judgment, and that any funds which are collected shall be subjected to the jurisdiction of this Court and made available for distribution to the unsecured creditors.

(Doc. 127-4, p. 3) (emphasis removed). The Chatelains did not appeal the final order or contest the provision requiring that funds from any future collection of HGD's arbitration award would be used to pay the Chatelains' unsecured bankruptcy creditors. *See Huntsville Golf Dev., Inc. v. Whitney Bank*, No. 5:13-CV-671, 2014 WL 1117640, at *4 (N.D. Ala. Mar. 19, 2014) [hereinafter *HGD 2*].

### C. HGD enforces the BCCI judgment

HGD registered its judgment against BCCI in the United States District Court for the Middle District of Tennessee in 2001. (Doc. 126-1, pp. 171–72). BCCI subsequently "dissolved and ceased operations." *HGD 1*, 2011 WL 3420602, at *1. In 2008, HGD filed a lawsuit in the Middle District of Tennessee against Robert Brindley, Sr.; Ronald Brindley; and their various corporate entities.

In that action, HGD attempted to pierce BCCI's corporate veil to enforce the arbitration judgment. *Id.* By the time the case reached trial in September 2010, Robert Brindley, Sr. was deceased and his estate was substituted as a defendant. *HGD 1*, 2011 WL 3420602, 1:08-cv-00006 (Doc. 122).[5] The district court found that the Brindleys' actions following the confirmation of the arbitration award gave rise to "a strong inference that these actions were taken to perpetuate a fraud against the creditors of BCCI." *HGD 1*, 2011 WL 3420602, at *21. The district court awarded HGD the amount of the original arbitration award plus interest, over $300,000 in attorney's fees, and costs and expenses. *HGD 1*, 2011 WL 3420602, 1:08-cv-00006 (Doc. 236, Doc. 275). Both the Brindley Estate and HGD appealed to the United States Court of Appeals for the Sixth Circuit. On November 28, 2011, while the appeals were pending, the parties entered a settlement resolving all claims for $985,000. (*See* Doc. 127-15).

### D. The settlement negotiations

Unbeknownst to HGD or the Chatelains, during the settlement negotiations between HGD and the Brindley Estate, Jeffrey Brindley and counsel for the Brindley Estate contacted counsel for Whitney Bank and offered to purchase Whitney Bank's claim against the Chatelains in the Alabama bankruptcy proceeding. (Doc. 126-3, pp. 19–21; Doc. 125, p. 13). The secret negotiations

---

[5] *See* n. 3, above.

among the Brindley Estate, Jeffrey Brindley, and Whitney that ensued, as well as their final agreement, form the foundation of HGD's claims. The negotiations began on October 2, 2011 and continued while the Brindley Estate was simultaneously negotiating with HGD to resolve HGD's judgment against the Estate. (*See* Doc. 126-3, pp. 19–21; *see also* Doc. 125, p. 13). The final agreement between the Brindley Estate, Jeffrey Brindley, and Whitney provided that the Estate would pay Whitney's attorney's fees for reopening the Chatelains' bankruptcy proceedings, and the Estate and Whitney would split any recovery in the bankruptcy proceedings. (Doc. 127-17, p. 3; Doc. 128, p. 7). Jeffrey Brindley guaranteed the performance of the Estate. (Doc. 127-17; Doc. 128, p. 7). The Brindley/Whitney negotiations and resulting deal were not revealed to HGD at any time during the settlement negotiations between HGD and the Brindley Estate. (*See* Doc. 128, pp. 4, 5).

### E. Whitney Bank reopens the bankruptcy proceedings

On December 2, 2011, shortly after the Brindley Estate transferred the settlement funds to HGD, Whitney Bank filed a motion to reopen the bankruptcy proceedings against the Chatelains. (Doc. 127-18). On January 11, 2012, the bankruptcy court ordered the Chatelains to cause HGD to transfer $510,000—the portion of the settlement proceeds not earmarked for legal fees and expenses—to a trust account. (*See* Doc. 127-20, p. 2; *see also* Doc. 126-8, p. 4). In February

2013, the bankruptcy court ordered the appointment of a Chapter 11 trustee to distribute the $510,000 pursuant to the 1993 bankruptcy court order. (Doc. 127-20, p. 7). HGD appealed the bankruptcy court order to the district court. *HGD 2*, 2014 WL 1117640, at *3.

### F. The District Court for the Northern District of Alabama affirms the bankruptcy court's decision

On March 19, 2014, the United States District Court for the Northern District of Alabama affirmed the bankruptcy court's decision. *HGD 2*, 2014 WL 1117640, at *14. This Court, acting through another judge, held that *res judicata* precluded HGD from collaterally attacking the 1993 confirmation order requiring the HGD/Brindley settlement proceeds to be used to pay the Chatelains' unsecured creditors. *Id.* at *3.

### G. The current proceedings and the defendants' motion to dismiss

Shortly after HGD filed this case, Whitney Bank and the Brindley defendants filed motions to dismiss all of HGD's claims. (Docs. 11, 13). This Court, in ruling on the motions, narrowed the claims on which HGD could proceed. The Court dismissed HGD's claims for unjust enrichment, tortious interference, and all the claims HGD alleged against the Whitney-Brindley partnership, finding that they were not viable. (Doc. 56, pp. 19-21, 23, 26-28). The Court held that HGD had adequately pleaded its claim for breach of contract under Tennessee law as well as

its claims for fraud and civil conspiracy under Alabama law. (Doc. 56, pp. 18-19, 24-26). Although the Court found these theories viable, the Court expressly limited HGD to pursuing attorney's fees for the breach of contract claim and nominal damages for the remaining two theories. (Doc. 56, pp. 28-34). The Court declined to dismiss HGD's claim for punitive damages noting that even an award of nominal damages could support an award of punitive damages. (Doc 56, p. 35); *Life Ins. Co. of Ga. v. Smith*, 719 So. 2d 797, 806 (Ala. 1998).

HGD now asserts that it is entitled to summary judgment on its breach of contract claim against the Estate and on the Estate's counterclaim against HGD. The defendants argue that they are entitled to judgment on all of HGD's remaining claims against them. For the reasons stated below, the Court will enter judgment in favor of the defendants on HGD's claims, and the Court will enter judgment for HGD on the Estate's counterclaim.

## IV. DISCUSSION

### A. HGD's claim for breach of contract

"To show a breach of contract under Tennessee law, a party must prove '(1) the existence of a contract, (2) breach of the contract, and (3) damages [that] flow from the breach.'" *See Hinton v. Wachovia Bank of Del. Nat'l Ass'n*, 189 Fed. Appx. 394, 398 (6th Cir. 2006) (citation and internal quotation marks omitted)

(alteration provided by *Hinton*).[6] The defendants acknowledge that the settlement agreement is a valid contract. HGD argues that the Estate breached the settlement agreement by violating the release provisions and the implied covenant of good faith and fair dealing. (Doc. 1, ¶ 67; Doc. 128, pp. 15–18; Doc. 136, pp. 13–24). The Court disagrees.

### 1. Release provisions

Under the terms of the settlement agreement, the Estate "completely and irrevocably release[d] and forever discharge[d] Plaintiff from any and all past, present or future claims, demands, obligations, actions, causes of actions [*sic*], rights, damages, and liabilities of whatsoever kind or character, at law or in equity, known or unknown, anticipated or unanticipated, arising out of or relating to, either directly or indirectly" the events that gave rise to the settlement. (*See* Doc. 17-7, p. 3). The settlement agreement defines "Plaintiff" as "Huntsville Golf Development, Inc." (Doc. 17-7, p. 2). Mr. Chatelain was not a party to the settlement agreement, and it is undisputed that the Estate did not release Mr. Chatelain from any claims arising out of or relating to the events that gave rise to the settlement proceeds. (Doc. 126-1, pp. 102, 111–12).[7]

---

[6] Tennessee law governs HGD's breach-of-contract claim. (*See* Doc. 56, pp. 16–17).

[7] Mr. Chatelain testified that he thought "the agreement should have named [him] also[, but his] attorneys felt differently." (Doc. 126-1, p. 112).

The sharing agreement between the Estate and Whitney obligated the Estate to pay the attorney's fees associated with Whitney's motion to reopen Mr. Chatelain's bankruptcy proceedings and obligated Whitney to pay the Estate half of the bankruptcy recovery. (*See* Doc. 127-17, p. 3). The sharing agreement did not create any "claims, demands, obligations, actions, causes of actions [*sic*], rights, damages, [or] liabilities" between the Estate and HGD. (Doc. 17-7, p. 3). HGD argues that Whitney's claim to Mr. Chatelain's bankruptcy debt is related to the events that gave rise to the settlement and that, as a result, the Estate asserted a claim in violation of the settlement agreement by sharing in Whitney's claim. (Doc. 128, pp. 15–22). HGD is right that Mr. Chatelain's bankruptcy proceedings are related to the settlement between HGD and the Estate. However, as noted above, the Estate did not release Mr. Chatelain from any claims related to the settlement, and the Estate did not assert any claims against HGD. The Estate, through a legitimate bankruptcy debtor, sought funds that the Chatelains, by court order, had to release for distribution to the Chatelains' bankruptcy creditors. Therefore, the Court finds as a matter of law that the Estate did not breach the release provisions of the settlement agreement by purchasing a portion of Whitney's claim to Mr. Chatelain's debt.

## 2.    Implied covenant of good faith and fair dealing

"It is well settled that every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement, and there is an implied undertaking on the part of each party" not to take any action that "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Medtronic, Inc. v. NuVasive, Inc.*, 2003 WL 21998480, at *11 (Tenn. Ct. App. Aug. 20, 2003) (citing *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995)); *see also Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 661 (Tenn. 2013) ("Tennessee courts have consistently . . . recognize[d] an implied covenant of good faith and fair dealing in every contract."). HGD argues that by entering into an agreement with Whitney "to seize the Settlement Proceeds in the Bankruptcy Court," the Estate took actions that "had the effect of destroying the rights of HGD to receive the fruits of the contract." (Doc. 1, ¶ 67). The Court disagrees.

In its 1993 order, the Bankruptcy Court ordered Mr. Chatelain to "attempt to collect th[e] judgment [from Brindley Construction Co., Inc.]" and to make "any funds which are collected . . . available for distribution to [Mr. Chatelain's] unsecured creditors." (Doc. 127-4, p. 3). On September 20, 1994, the Bankruptcy Court closed Mr. Chatelain's case. (Doc. 124 in Case No. 92-81161-EDB-11) ("[T]he estate of [Mr. Chatelain] hereby is closed."). The Bankruptcy Court stated

that Mr. Chatelain's "case may be reopened under [11 U.S.C. § 350(b)]." (Doc. 124 in Case No. 92-81161-EDB-11). Thus, even though the Bankruptcy Court ordered that any funds that HGD recovered from the Estate must be paid into the bankruptcy estate, Whitney had to take legal action under § 350(b) to initiate the process. (Doc. 127-4, p. 3). Without the Estate's promise to pay "the reasonable attorneys' fees and expenses . . . incurred in pursuit of" Whitney's claim to the settlement proceeds, Whitney may not have pursued its claim. (Doc. 127-17, p. 3). Thus, the Estate's outreach to Whitney prompted actions that Whitney otherwise may not have taken.

Nevertheless, the Estate's sharing agreement with Whitney did not have the effect of injuring or destroying HGD's right to receive the fruits of the settlement agreement. Even though the Bankruptcy Court closed Mr. Chatelain's case in 1994, the settlement proceeds remained subject to the Bankruptcy Court's 1993 order.[8] Mr. Chatelain testified that he "knew when [he] settled . . . that [his] personal bankruptcy estate had a claim on the result of the litigation against the [estate]." (Doc. 126-1, p. 151).

---

[8] Section 541 of the United States Bankruptcy Code provides that the filing of a voluntary petition under Chapter 11 "creates an estate." 11 U.S.C. § 541(a). Included in the bankruptcy estate is "[a]ny interest in property that the [bankruptcy] estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Under § 554(d), "[u]nless the court orders otherwise, property of the Estate that is not abandoned under this section and that is not administered in the case remains property of the [bankruptcy] estate." 11 U.S.C. § 554(d). The record contains no evidence that the bankruptcy trustee abandoned its claim to the settlement proceeds, and it is undisputed that the settlement proceeds had not been administered when HGD and the Estate executed the settlement agreement.

HGD protests that it surely had a property interest in the settlement funds before the bankruptcy court ordered that HGD pay them into a trust account, and that the actions of the Brindley estate deprived them of this right. (Doc. 136, pp. 22). HGD's entitlement to retain those settlement funds which the Bankruptcy Court did not order them to pay into trust accounts does not indicate that HGD was ever entitled to retain the whole of the settlement proceeds. HGD raised the same question of property interest in the settlement in its appeal of the order reopening the Chatelain's bankruptcy. This Court, acting through another judge, held that the determination that the settlement was part of the bankruptcy estate was res judicata, and thus, HGD was estopped from asserting that as a separate legal entity, it had an independent property right in the settlement funds. *HGD 2*, 2014 WL 1117640, at *11. Consequently, as soon as the Brindley Estate paid the settlement funds to HGD, a portion of that sum became the property of the Chatelain bankruptcy estate. Whitney had the legal right to petition to reopen the bankruptcy proceedings. Neither the bankruptcy court's order of January 2012 nor its order of February 2013 divested HGD of a property interest in the settlement funds; the orders only addressed the issue of possession.

Thus, HGD had a right under the settlement agreement to receive the settlement proceeds but not to retain them. It is undisputed that HGD received the settlement proceeds. Even if Whitney had not filed a motion to reopen Mr.

Chatelain's bankruptcy case, HGD would have been legally obligated to make the settlement proceeds "available for distribution to [Mr. Chatelain's] unsecured creditors." (Doc. 127-4, p. 3). Thus, the Estate did not interfere with HGD's right to receive the fruits of the settlement agreement.

Accordingly, the Court finds as a matter of law that the Estate did not breach the covenant of good faith and fair dealing implied in the settlement agreement with HGD by entering into the sharing agreement with Whitney.

### B.    Fraud and deceit

To state a claim for fraud, HGD must show "(1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance." *George v. Associated Doctors Health and Life Ins. Co.*, 675 So. 2d 860, 862 (Ala. 1996). To state a claim for deceit, HGD must show that the Estate willfully or recklessly misrepresented a material fact with the intent to mislead. *Hughes v. Hertz Corp.*, 670 So. 2d 882, 888 (Ala. 1995). The Estate is entitled to judgment as a matter of law on HGD's fraud and deceit claim because the record viewed in the light most favorable to HGD shows that the Estate did not make any false representations.

The Estate represented in the settlement agreement that it would release HGD from all claims related to the settlement proceeds. As discussed, the Estate

did release HGD from all claims related to the settlement proceeds. *See* pp. 8–9, *supra*. HGD does not allege that the Estate made any other false representations. The record contains no evidence that the Estate represented to HGD that it would not purchase a portion of Whitney's claim to Mr. Chatelain's bankruptcy debt. Accordingly, the Estate is entitled to judgment as a matter of law on HGD's fraud and deceit claim.

### C. Conspiracy

"In Alabama, civil conspiracy is not a separate cause of action, but relies on the presence of an underlying tort." *United Steel, Paper and Forestry, Rubber Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union AFL-CIO v. Wise Alloys, LLC*, 642 F.3d 1344, 1351 (11th Cir. 2011). "[A] conspiracy claim must fail if the underlying act would not support an action." *Triple J Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993).

HGD argues that Whitney, Jeffrey Brindley, and the Estate conspired to commit fraud and deceit by entering into the sharing agreement. (Doc. 136, pp. 43–48). Because the Court finds that HGD's claim for fraud and deceit fails as a matter of law, HGD's claim for conspiracy must fail as well. *See Triple J Cattle*, 621 So. 2d at 1225. Accordingly, the defendants are entitled to judgment as a matter of law on HGD's conspiracy claim.

**D.     The Estate's counterclaim for breach of contract**

The Estate argues that HGD breached the settlement agreement by filing this lawsuit.  (Doc. 62, p. 12; Doc. 137, pp. 29–31).  Under the terms of the settlement agreement, HGD released the Estate from "any and all past, present or future claims, demands, obligations, actions, causes of actions [*sic*], rights, damages, and liabilities of whatsoever kind or character, at law or in equity, known or unknown, anticipated or unanticipated, arising out of or relating to" the events that gave rise to the settlement agreement.  (Doc. 127-15, p. 2).  The settlement agreement also provides that a party may "take court action in order to enforce th[e] Agreement." (*See* Doc. 127-15, p. 6).

It is undisputed that HGD asserts claims in this action for breach of the settlement agreement.  Thus, this is an action to enforce the settlement agreement. Accordingly, HGD is entitled to judgment as a matter of law on the Estate's counterclaim for breach of contract.

## IV.     CONCLUSION

For the reasons stated above, the Court grants the defendants' motion for summary judgment on HGD's claims for breach of contract, fraud and deceit, and conspiracy.  (Doc. 124).[9]  The Court also grants HGD's motion for summary

---

[9] Because the Court grants the defendants' motion for summary judgment on HGD's breach of contract claim, the Court denies HGD's motion for judgment in its favor on its breach of contract claim against the Brindley Estate.

judgment on the Estate's counterclaim for breach of contract. (Doc. 127). The Court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 14, 2017.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE